[PHILADELPHIA, FEBRUARY 16TH, 1839.]

NAGLEE *against* ALBRIGHT and Others.

4wh291
e197 302

4 Wh 291
24 SC 4352

IN ERROR.

1. The acknowledgment of a sheriff's deed in open Court, and the registering of it in the Prothonotary's Office, are equivalent to recording it in the office of the Recorder of Deeds, in respect to notice to a subsequent purchaser from the defendant in the execution.

2. *It seems*, that in the case of vacant lands or lots, where there is no actual possession, such deed so registered has the same effect as a deed of bargain and sale duly recorded, and conveys not only the title, but the actual possession.

3. After a possession of forty years from the date of a sheriff's deed of a vacant lot, an entry by the sheriff's vendee, in pursuance of the deed, may be presumed.

4. Mere payment of the taxes accrued on a vacant lot, by a person having no title, cannot be considered as giving such person actual possession in contemplation of law, especially of that notorious adverse kind which is necessary to constitute an ouster of the party having the legal title.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action of trespass *quare clausum fregit*, brought by William Albright, Samuel Albright by his committee William Albright, Michael Albright, and William Albright the younger, against Henry Naglee.

The *locus in quo* was a lot of ground situate on the east side of Schuylkill Seventh street, between Walnut and Locust streets, in the city of Philadelphia, the title to which was in dispute between the plaintiffs and defendant.

Both parties claimed under one Archibald Carr, who owned three lots of ground including the lot in question. On the 16th of May, 1792, he mortgaged this lot to Leonard Sayre, and on the 1st of October, 1792, sold and conveyed the three lots to David Dewar, without notice of the mortgage, which was recorded by Sayre on the 9th of October, within the six months then allowed by law for recording of mortgages.

On the 28th of November, 1793, Dewar sold to one M'Curragh, who on the 2d of May, 1800, sold to one Baker, who on the 19th of September, 1806, conveyed to Naglee, the defendant.

To September term, 1795, of the Common Pleas, Sayre issued a writ of *scire facias* upon his mortgage, without notice to the terre-tenants. Judgment was obtained in due course of law, and an execution issued, by virtue of which the sheriff sold the lot in question to Michael Albright. A deed was accordingly executed by the sheriff to Michael Albright, on the 18th of February, 1796, which was duly acknowledged and entered in the prothonotary's office, but not recorded in the office for recording deeds, &c. Michael Albright died intestate, leaving the plaintiffs his heirs at law. .

The lot remained open and unenclosed until the defendant put a fence upon and around it, which was the trespass complained of in this action.

On the trial before Jones, J. on the 13th of April, 1837, the plaintiffs gave their deeds in evidence, and proved their descent from Michael Albright. The defendant produced the conveyances above mentioned, and also produced the assessment books of Locust Ward —in which the lot was situate—by which it appeared, that from 1796 to 1836, there was no property in the ward assessed to any person of the name of Albright, and that certain lots, of which the premises were believed to bo part, were assessed to Henry Naglee. The defendant also proved the payment of taxes by him for several years after 1808. The plaintiffs then examined a witness named Condy, who proved that as agent for Michael Albright, he had called upon the collector about the year 1820, to pay the taxes upon the lot, and learned from him that it had not been assessed. The witness also proved that about the years 1832 and 1835, Albright exercised some acts of ownership over the property.

The learned judge, after stating the titles of the parties as they appeared from the deeds given in evidence, charged the jury in substance as follows.

" The defendant objects that the plaintiffs' title is defective or insufficient for *several reasons.*

1. That the sheriff's deed not being recorded in the office for the recording of deeds is void as against subsequent purchasers. It was not necessary to record this deed (the sheriff's deed to Michael Albright) in the office for the recording of deeds in order to give notice. The record of the mortgage in that office and the *scire facias* upon the mortgage and the proceedings therein in the Court of Common Pleas, gave legal notice to purchasers of the state of the title. This objection is therefore without foundation.

(Naglee *v.* Albright.)

2. The defendant further objects that no proceedings were had by the plaintiffs or by Michael Albright (under whom they claim) after the sheriff's deed to him, to get possession of the land, and therefore the defendant contends that the legal possession remained in those who held under the mortgagor. The sheriff sells upon an execution only the defendant's right in the property, and the right of possession. If the defendant whose property is sold upon execution be in possession at the time of the sale, or if any one be in possession claiming under him by a title subsequent to the mortgage, the law has provided a summary method for getting possession. If a stranger be in the actual occupancy at the time of the sale, the purchaser must bring an ejectment to get the possesion from him. But if no person was in actual occupancy of the lot in question at the time of the sale under the mortgage, it was not necessary to have recourse to any legal proceedings, for no one having the actual occupancy who could be ejected or dispossessed, the purchaser would have a perfect right to enter upon the land and take the actual possession of it, after the execution and delivery of a deed to him by the sheriff. The purchaser could not for such an entry and possession be indicted as for a forcible entry or detainer, nor could he be dispossessed by an action of ejectment brought by the defendant or any claiming under him. Upon these several points therefore you will understand the law to be, that if no person was in the actual occupancy of the lot at the time of the sale under the mortgage to Michael Albright, it was not necessary to have recourse to any legal proceedings to get the actual possession; but Mr. Albright the purchaser had a right to enter immediately under his deed. Yet it was not necessary for him actually to enter in order to get such a possession. And if you should find that neither Michael Albright nor the plaintiffs took possession before the putting up of the fence by the defendant, the plaintiffs cannot maintain this action. These observations bring us to another question which has been raised, viz. whether the plaintiffs could enter after twenty-one years elapsed from the execution and delivery of the sheriff's deed to Michael Albright. Before answering this question, I will remark, with a view to another part of the case, that if neither the plaintiffs nor their ancestor did actually enter within twenty-one years, they could not have been ousted or dispossessed during that time. It is very obvious that a man cannot be deprived or dispossessed of that which he never had. Upon this supposition there could be no adverse possession of the defendant, originating in an ouster of the plaintiffs; and if you should be satisfied that Mr. Albright never entered during that time, the evidence relied on to prove an ouster cannot be made use of for that purpose.

But to come to the question raised, it depends upon or involves another, viz. whether anything short of an actual possession or occupancy under Dewar's title, can deprive the plaintiffs of this right to enter after twenty-one years from the execution of the sheriff's deed.

(Naglee *v.* Albright.)

It appears to me that nothing short of such an actual possession of the property, will defeat the plaintiff's right of entry. The statute of limitations is designed to protect the interests of persons actually on the land. For this purpose the act is beneficial. An actual possession of lands is evidence of seizin, and the receipts of the rents and profits of the lands is also evidence of seizin. But this applies only to improved lands. In case of unimproved, unoccupied lands the statute cannot operate upon any such principle. You will therefore proceed to inquire—

1. Whether Michael Albright or the plaintiffs ever did enter upon this lot. If you find they did not, the plaintiffs cannot recover in this action.

2. If you find that they did actually enter as owners of this lot under the sheriff's deed, before the defendant did the act complained of, then the plaintiffs had a possession which will enable them to maintain this action. Unless,

3. You find such entry was made twenty-one years before the trespass complained of. If you should find the fact to be so, you will proceed to inquire—

4. Whether the plaintiffs or their ancestor, after such an entry, were ousted or dispossessed by the defendant, and continued to be dispossessed or out of possession during twenty-one years. But before this question can arise, you must be satisfied that Michael Albright did enter twenty-one years before the fencing of the lot. There is no express evidence of such an entry; the only ground upon which you can find it, is presumption. Mr. M. Albright had the title; he had a right to enter. It is natural that a man owning property that is vacant, should enter upon it. Still the fact may be otherwise, and you are not bound to presume an entry from these facts, unless you are satisfied in conscience that such a conclusion is reasonable. If, however, you find that Mr. M. Albright did enter twenty-one years before the fencing of the lot, then the question will arise, whether he was ousted by the defendant, and the land occupied by the defendant. The only evidence you have to go on in this part of the case, is the assessment of taxes and the payment of them by the defendant. This also is presumptive evidence; the weight and value of which you are to consider. In short, upon this part of the case, you must be satisfied of the evidence of these facts, viz., that Albright, (the father of the plaintiffs,) entered twenty-one years or more before the trespass complained of, and that having so entered, the defendant entered upon him, and occupied adversely to Mr. Albright, or the plaintiffs, during twenty-one years before the trespass complained of. Both the facts of entry and ouster depend upon presumptive evidence.

5. But suppose you should not find the fact to be that M. Albright entered upon them twenty-one years before the trespass. Then you will consider whether there was an actual adverse occupancy by

(Naglee *v.* Albright.)

the defendant of the lot during twenty-one years, before any entry upon the land by the plaintiffs, and if you find the facts to be so, then the plaintiffs cannot recover in this action.

6. If you should find however, that the defendant did not occupy in the manner supposed (under the last head,) then the only remaining question is—

7. Whether the plaintiffs entered as owners at any time before the trespass complained of. The only evidence upon this part of the case is, the testimony of Mr. Condy. (Here the judge adverted to the testimony, and then proceeded.) It is for you to say, whether this testimony proves the taking of possession. Having now gone through the case as it has been presented. I will state to you briefly and connectedly the points of inquiry.

1. Did the plaintiffs or Michael Albright ever enter actually upon the lot under the sheriff's deed, (18th April, 1796.) If you find they did not, your verdict should be for the defendant.

2. If you find that the plaintiffs or their father did enter, you will then inquire at what time the entry was made, and having settled that point you will then inquire,

3. Whether the defendant occupied the property adversely to the plaintiffs twenty-one years, either before such entry or after it ; and if you find that the defendant, or those under whom he claims, did so occupy it, you will find your verdict for the defendant.

4. But if you find that no actual entry was made till that spoken of by Mr. Condy, and if you find that the lot was vacant from the time of sale until that time—that is, unoccupied by either party, then you will find for the plaintiffs, and assess nominal damages.

I will add an observation upon the evidence. The testimony referring to the assessment and payment of taxes, has been admitted merely as evidence bearing upon the fact of actual possession. You are at liberty to draw such inferences from it, bearing upon the fact of actual possession as in conscience you believe are just and reasonable. The assessment and payment of taxes by the defendant, do not, in point of law, constitute possession. They are only evidence which a jury may take into consideration, with other circumstances of the case, in order to decide whether he actually had the possession."

The defendants' counsel excepted to this charge, and the jury having found for the plaintiffs, a writ of error was taken out, and the following exceptions filed.

" I. The Court erred in rejecting evidence of the assessments in the assessor's books, because they did not specifically describe the property assessed.

II. Because the judge erred in charging the jury—

1. That the sheriff's deed acknowledged in open Court, and entered upon the records of the Court in the prothonotory's office according to the practice, but not recorded in the recorder's office in pursuance of the statute, was sufficient notice as against subsequent purchasers without notice, for a valuable consideration.

2. That there must have been an *actual* possession of land by the defendant for twenty-one years, though claiming under colour of title, to enable him to defend himself in this action under the statute of limitations.

3. That the assessment of land to the defendant and those under whom he claims, and payment of taxes by them for more than twenty-one years, was not such evidence that the plaintiff was out of possession as to defeat him in this action.

4. That in order to defeat the plaintiff in this suit the defendant must have proved an *actual, visible, notorious and hostile possession* for twenty-one years by him or those under whom he claims.

5. That a constructive possession by the plaintiff, unaccompanied by the payment of taxes, or any other exercise of power over the land for more than twenty-one years, was sufficient on re-entry to enable him to maintain trespass.

6. That though there was no evidence to show that the plaintiff had entered under the sheriff's deed in 1796, until 1822, and though the defendant had paid taxes in the mean time, they might find that the possession had been vacant, and that the plaintiff's entry in 1822 re-invested him with the actual possession.

7. That the statute of limitations runs only in favour of persons actually on the land.

8. That they might presume the plaintiff entered under his deed, though there was no proof of it.

9. That they must find that the defendant had *actual possession* of the land in order to protect himself under the statute of limitations. and that the assessments and payments of taxes by the defendant, and the non-payment of the taxes by the plaintiff were admitted as *bearing on the question of possession.* But that they must find *an actual possession* by the defendant, and if they could in conscience find that the defendant was in the actual possession from that evidence, they might do so."

Mr. *M'Ilvaine* and Mr. *Mallery,* for the plaintiff in error.

1. The learned judge before whom the cause was tried below ruled that it was not necessary that a sheriff's deed should be recorded in the recorder's office, and told the jury that they might presume that the sheriff's vendee entered into possession, although there was no proof of any entry or possession. We allege that the evidence negatived the idea of possession on the part of the plaintiffs.

(Naglee *v.* Albright.)

The only possession which the subject admitted of was proved to be in the defendant. In *Miller* v. *Shaw*, (7 *Serg. & Rawle*, 134,) Chief Justice TILGHMAN seems to consider an actual entry by the sheriff as necessary. The act of assembly gives the same effect to deeds of bargain and sale duly recorded, as to feoffments. This deed, however, was not recorded as the act directs, and therefore possession is not to be presumed. The act of 1705 merely says that on a sale under a *levari facias*, the land shall be conveyed to the buyers. It is true that in *Shrider's Lessee* v. *Nargan*, (1 *Dall.* 68,) it is said that the registering of a sheriff's deed in the prothonotary's office is a sufficient recording within the act; but the question in that case was of the admissibility of the deed in evidence, not of the effect of registering it as notice. The same remark may be made of the dictum of Judge YEATES in *M'Cormick* v. *Meason*, (1 *Serg. & Rawle*, 96.) The act of 1775 uses very broad language : " All deeds and conveyances of and concerning any lands, &c., or whereby the same may be any way affected in law or equity, &c., shall be recorded in the office for recording deeds, &c., in the county where such lands, &c., are situate, within six months after the execution of such deed," &c. There is no act of assembly authorising an abstract by the prothonotary to be entered. Suppose the prothonotary to neglect entering the abstract, would the title be affected ? In *Lodge* v. *Berrier*, (16 *Serg. & Rawle*, 297,) it was held, that the minute of the prothonotary of the acknowledgment of a deed by the sheriff is not evidence to prove the deed, if the non-production of it is not accounted for.

2d. The judge charged that they must find that the defendant had actual possession of the land in order to protect himself under the statute of limitations, &c. Now this was a vacant unenclosed lot on the *commons*, during the greater part of the time previous to the ejectment ; and it was not pretended that there was actual occupancy on either side. The English common law is doubtless with the charge of the Court. There actual occupancy is necessary to maintain trespass and to give the benefit of the statute of limitations. 1 *Bac. Ab.* tit. *Trespass.* 3 *Levinz.* 209. 2 *Hayes Conveyancing*, 402. In *Miller* v. *Shaw*, (7 *Serg. & Rawle*, 134,) Chief Justice TILGHMAN said that the law of possession is not quite the same in countries long settled and thickly inhabited, as in this state. In *Royer* v. *Benlow*, (10 *Serg. & Rawle*, 303,) payment of taxes was held to be evidence of possession. So in *Read* v. *Goodyear*, (17 *Serg. & Rawle*, 350,) and *M'Call* v. *Neely*, (3 *Watts*, 69.) In *Sergeant's Land Law*, p. 223, it is said that " payment of taxes for twenty-one years and upwards may be tantamount to adverse possession, and make a title good by the statute of limitations, which otherwise would be invalid, where the owner has lain by and not paid taxes, or pursued his claim." The rule with respect to vacant town lots is the same as that which has been laid down respecting unseated lands. *M'Lelland*

(Naglee *v.* Albright.)

v. *M'Calmont*, (3 *Penn. Reps.* 106.) In *Mackentile* v. *Savoy*, (17 *Serg. & Rawle,* 109,) very slight evidence of ownership was considered sufficient in the case of a vacant city lot.

No counsel appeared on behalf of the defendants in error.

The opinion of the Court was delivered by

SERGEANT, J.—The points of law arising in this case may be more conveniently considered as they have been argued in this Court, than by taking up one by one the numerous subdivisions in which they present themselves in the defendants' specification of errors.

1. It is insisted that the Court ought to have instructed the jury, that the sheriff's deed not being recorded in the office for the recording of deeds, is void and insufficient as against subsequent purchasers. But it has always been held in the case of sheriffs' deeds, that their acknowledgment in open Court, and the minute taken of them of record by the prothonotary, is a sufficient recording within our recording acts; differing in this respect from other deeds and conveyances, which may be acknowledged before a judge, justice, or other officer, and must be recorded in the recorder's office of the proper county. This distinction has existed in Pennsylvania ever since the passage of the act of 1705, relative to executions, and the act of 1715 establishing a recorder's office; and sheriffs' deeds have, it is believed, been rarely recorded in the latter. It is true that this may be an inconvenience to purchasers and others, in examining titles; but they have the opportunity of ascertaining sheriffs' conveyances, by resorting to the minute books of the Courts, in which an abstract of the contents of sheriffs' deeds acknowledged there, is regularly kept, and a copy of which is evidence after showing the loss of the original. The point was expressly determined as long ago as the year 1782, in *Shrider* v. *Nargan*, (1 *Dall.* 68,) where the objection was made, that a sheriff's deed of the sale of lands under a writ of *venditioni exponas*, not being recorded in the rolls' office according to the act of assembly of 1775, could not be read in evidence, but it was not allowed, because, said M'KEAN, C. J., it was acknowledged in Court; and the registering it in the prothonotary's office, as is always done, is a sufficient recording within the act. This decision has never been contradicted, but the usage has been in accordance with it, and the decision is recognized as late as 1814, by Judge YEATES, in *M'Cormick* v. *Meason*, (1 *Serg. & Rawle*, 96,) who said it had been determined that an acknowledgment by the sheriff in open Court, and a minute of this on the record, was equivalent to recording, and that this was before he came upon the bench. The point certainly ought now to be considered as beyond dispute.

2. It is urged that trespass *quare clausum fregit* cannot be maintained without actual entry by the the sheriff's vendee, and that

(Naglee v. Albright.)

.although the Court directed the jury that it was necessary for the plaintiffs actually to enter in order to get possession, and that if neither they nor their father under whom they claim ever took possession before the putting up of the fence by the defendant, the plaintiffs cannot maintain this action, yet they erred in leaving it to the jury to presume in the absence of any express evidence of the fact, that the father did enter by virtue of his sheriff's deed dated in 1796. What was the legal effect of this sheriff's deed to Michael Albright in vesting the possession of the lot in him either by its own efficiency, or by virtue of any presumption of entry under it into a lot supposed at that time and long after to be vacant, was a question undoubtedly very material in the determination of this action of trespass. · It seems to be rightly admitted by the counsel for the plaintiff in error that if this had been an ordinary conveyance which had been duly recorded in the recorder's office agreeably to the provisions of recording acts, then it would have transferred to the grantee not only the complete title, but also the actual possession, if the lot were at that time vacant.    For by the act of 1715, "all deeds and conveyances made or to be made and proved or acknowledged and recorded, &c. shall be of the same force and effect here for the giving possession and seisin, and making good the title and assurance of the said lands and tenements and hereditaments as deeds of feoffment with livery and seisin, or deeds enrolled in any of the King's Courts at Westminster are or shall be in the kingdom of Great Britain." But it is contended that these acts do not apply to sheriffs' deeds, which are provided for by an earlier act of assembly (1705) and are differently acknowledged and recorded.    I am inclined however to think, that where the land or lot sold by the sheriff is vacant, there is no such distinction in the effect of a sheriff's deed and that of another person, and that whatever differences there may be in the phraseology or dates of the act of assembly or the modes of acknowledging and recording deeds, a sheriff's deed conveys not only the title of the defendant but also the actual possession to the purchaser, in case there is no other possession at the time, either in the defendant, or any other person, in the same manner and as fully as an ordinary deed.    I can see no reason under the law and practice of Pennsylvania, why a sheriff's deed should be more limited in its effect than an ordinary deed, and why it should in all cases require an actual entry to give possession, though it is not necessary in other deeds of vacant land, as it accompanies the title.    But without deciding this point, I am clearly of opinion, that after a lapse of forty years from the date of a sheriff's deed for a vacant lot in the city of Philadelphia an entry by the sheriff's vendee in pursuance of that deed may fairly be presumed to have been made.    It would be very difficult and indeed in most cases impossible now to prove the fact; and after a length of time presumptions are often made to support a right, founded on the natural course which things would

(Naglee *v.* Albright.)

have taken among parties so situated.   See the cases cited 17 *Serg. & Rawle,* 352 ; 1 *Phill. Evid.* 129 notes.

3. The defendant relies on the evidence of his payment of taxes, as showing an adverse possession for more than twenty-one years, and therefore giving him a better title than the plaintiffs by virtue of the statute of limitations.   Mere payment of the taxes assessed on a vacant lot by a person having no title, cannot be considered as giving such person actual possession in contemplation of law, especially of that notorious adverse kind which is necessary to constitute an ouster of the party having the legal title.   It could not be pretended that trespass or ejectment would lie against such a person as defendant, to recover the land itself or damages for entering and treading down the grass or other injury.   Payment of taxes is of itself evidence of a claim of title and no more ;  and where a person has actually entered on a surveyed tract of land and occupied but a part, payment of taxes for the whole tract has been considered as evidence showing a colour of title to the whole, and making adverse possession of part amount to adverse possession of the whole.   But it has not been considered as of itself constituting possession where the party never actually entered at all.   And such will be found to be the cases referred to, of disputes between the owner of warranted land and persons entering and occupying it adversely.   It was allowed to explain the character of the possession and to extend it, but not of itself to constitute it.   It may serve to show who claimed to be owner, but not who was actually occupying it : for lands and lots are assessed in the supposed owner's name, whether he occupies it or not.   It would be of mischievous consequence to hold that a person having no title to a vacant lot, could by merely undertaking to pay the taxes or some of them, though even assessed in his name, put himself in the position of an actual possessor, in hostility to the real owner, and thus divest the title of the latter by force of the statute of limitations, without any visible possesion or act amounting in law to an ouster.   The owner's non payment of taxes cannot be considered as an abandonment of his title.   The doctrine of abandonment does not apply to lands held by a perfect title, but only to the imperfect titles by warrant and survey.   Nor is it alone an admission of ouster : though, in connection with other circumstances, it might be deemed to have that effect.

The opinion formed on this point, renders it unnecessary to examine the points involved in the bills of exceptions ; for if the purposed evidence had been received, it would not in our opinion make any difference in the result.

Judgment affirmed.