## PAINE & SLOCUM v. HUTCHINS.

### Constructive Possession.　Possessory Acts.　Practice. Instructions to Jury.

In trespass qua. clau., it appeared that plaintiffs had paid taxes on the locus in quo, and, in surveying the gore of which it was a part, had surveyed some of its outer lines. Held, that those acts were not acts of possession, but evidence of a claim of right merely.

The effect of possessory acts done upon parts of a gore under color of title to the whole, will not be extended by such color of title to the other parts; the land in the gore being at the time subject to ownership by various persons, and occupied by them by different kinds of possession.

In answering questions asked by the jury when they come in for further instructions, the court is not restricted to categorical answers, but may, and should, give such further instructions as may be necessary to keep the issues to be decided correctly before them.

TRESPASS *qua. clau.*, counting upon s. 51, c. 113, Gen. Sts., for cutting timber on lots Nos. 5 and 6 in Avery's Gore. Plea, the general issue, and trial by jury, April Term, 1876, ROYCE, J., presiding.

Plaintiffs claimed to own the whole of said gore, and introduced evidence showing color of title but not legal title thereto. It appeared that they had surveyed some of the outside lines of the lots in question in surveying the lines of the gore, and perhaps other lines of them in running out lots, and that they had paid taxes on them, that they had leased, and since the commis sion of the alleged trespass, had sold, portions of the gore for farms, but it did not appear what portions; that they had cleared

land, sold timber, built mills, worked quarries, and assisted in making roads and building school-houses thereon, and had spent time on the land for the purpose of surveying, selling, leasing, and improving it, and had employed agents for the same purpose, all under a claim of title thereto; but that they had never had tenants on either of the lots in question, and that they did not know that any one was ever on either of them by their direction or permission except in surveying.

The plaintiff's evidence further tended to show relative to the committing of the alleged trespass, that the defendant hired men to go upon said lots and cut timber and make hoops; that he went with the men to the place where said trespass was alleged to have been committed, and told them where to cut timber, and that the timber was cut and the hoops were made where the defendant directed; that he was there several times while the men were at work, and that he hired one Jackson to draw the hoops out for him. The defendant's testimony tended to show that he hired the men to cut timber and make hoops for him on land in Lowell, adjoining said gore, and not upon the lots in question, and that he did not hire Jackson to draw the hoops out, but that he was hired by the men who cut the poles; and that the defendant had no knowledge until after this suit was brought that the hoops came from the plaintiff's land, but supposed that they came from Jackson's. But it was not denied that the timber was in fact cut upon the lots in question, as claimed by the plaintiffs, nor that defendant had the hoops that were made therefrom.

The defendant claimed that plaintiffs had not shown constructive possession of the lots in question; but the court charged that the plaintiffs had shown color of title to them, and that the acts shown to have been done by them in connection with the gore land, such as surveying it, selling portions of it, making roads, and contributing to the building of school-houses, gave them constructive possession of the whole gore; or, to qualify, that it gave them constructive possession of the land upon which the trespass was proved to have been committed, if any was committed. To that charge the defendant excepted.

After the case had been submitted to the jury, and they had been

out some time, they returned for further instructions, and the foreman asked, "If we should find that the defendant knew the trespass was being committed, would that make him liable as a trespasser?" The court replied, "Well, the simple knowledge alone that a trespass was being committed, I do not think would make the party possessing that knowledge liable as a trespasser; but if a party is committing a trespass, and you are aiding, advising, and counseling in the trespass, that would make you liable as a trespasser." The foreman then asked, "If we find the defendant received the benefit of the hoops, how would it affect him?" to which the court replied, "That alone, I do not think would necessarily make a man liable. The goods may have been received innocently; they may have been received supposing that the party selling them was disposing of them for a proper purpose. If you should find that the defendant did not go into the woods with these men, but should find that he made such a contract with them as the evidence tends to show, by which it was agreed that they were to go into the woods where this timber was cut and make it into hoops, that would be a trespass. If however, on the other hand, you should find that there was no such contract made in point of fact, and that these men went into the woods and cut the timber without counsel or assistance of the defendant, * * * I do not think he would be liable." To the charge so given, the defendant excepted.

*Noble, Davis & Smith,* for defendant, cited *Kidder* v. *Kennedy,* 43 Vt. 717 ; *Doolittle* v. *Linsley,* 2 Aik. 155 ; *Oatman* v. *Fowler,* 43 Vt. 462 ; *Jackson* v. *Woodruff,* 1 Cow. 276 ; *Jackson* v. *Richards,* 6 Cow. 617 ; *Sharp* v. *Brandow,* 15 Wend. 577 ; *Chandler* v. *Spear,* 22 Vt. 388 ; 2 Waterman Tresp. 358.

*H. S. Royce,* for plaintiff, cited *Williston* v. *Morse,* 10 Met. 17 ; *Slater et al.* v. *Rawson,* 6 Met. 439 ; *Hunt* v. *Taylor,* 22 Vt. 556 ; *Beach* v. *Sutton,* 5 Vt. 209 ; *Doe ex dem. Pearsal* v. *Thorp,* 1 D. Chip. 92 ; *McGrady* v. *Miller,* 14 Vt. 128 ; *Spear* v. *Ralph,* 14 V.. 400 ; 2 Waterm. Tresp. 346, 350 ; *Kilborn* v. *Rewee,* 8 Gray, 415 ; *Kidder* v. *Kennedy,* 43 Vt. 717 ; *Woods* v. *Banks,* 14 N.

H. 106 ; *Sawyer* v. *Newland,* 9 Vt. 383 ; *Green* v. *Pettingill,* 47
N. H. 375 ; *Riley* v. *Jameson,* 3 N. H. 27 ; *Towle* v. *Ayer,* 8 N.
H. 59 ; *Bennett* v. *Conant,* 10 Cush. 163 ; *Cutts* v. *Spring,* 15
Mass. 135 ; *Parker* v. *Brown,* 15 N. H. 176 ; *Cobleigh* v. *Young,*
Ib. 493 ; *Chandler* v. *Walker,* 21 N. H. 283 ; *Lund* v. *Parker,* 3
N. H. 49.

The opinion of the court was delivered by ·

WHEELER, J. · The plaintiffs showed no legal title and right to
the *locus in quo,* but did show color of title. ·Their right to
maintain the action must depend, therefore, upon possession.
The acts claimed to be trespasses were committed on lots Nos. 5
and 6, and the question is, whether the plaintiffs had such posses-
sion of those lots as is necessary.

The plaintiffs' evidence tended to show that they had surveyed
some of the outside lines of these lots in surveying the outside
lines of the gore, and perhaps some other lines of them in run-
ning out lots, and that they had paid taxes on them ; but did not
show that they had done anything further upon these lots. These
were not acts of possession, but were merely evidence of a claim
of right. *Webb* v. *Richardson,* 42 Vt. 465 ; *Kidder* v. *Kennedy,*
43 Vt. 717 ; *Oatman* v. *Fowler,* 43 Vt. 462. The claim of a
right to land is an important element in making out possession,
but is not enough of itself to make out possession at all. It is
essential to give character to acts that would otherwise be mere
trespasses, and show them to be acts of ownership. The evidence
of any possessory acts done to either of these lots, or to any
others in their immediate vicinity, is wholly wanting, therefore
resort must be had to evidence of possession from other sources.
The claim of right shown covers the whole gore ; and there can
be no fair question but that the plaintiffs' evidence in respect to
having a mill built, and in letting and selling farms on the gore,
and having them occupied, showed, almost at least, unequivocal
acts of ownership. And if the plaintiffs' title to the whole gore
under which they were claiming when these acts were done, would
extend the acts by construction to the whole, according to the
ordinary rule in cases of acts done on parcels of land under

color of title to the whole parcels, then the plaintiffs' evidence did tend to show possession of the whole gore, including these lots that include the place of the alleged trespass. So that the question on this part of the case really is, whether the color of title did extend the effect of these acts to the whole gore. The gore itself is one of the municipal divisions of the state, although not organized as a municipality ; and the land in it was at the time in question subject to ownership by various persons, and occupied by them by different kinds of possession. It contained as much territory as many, and more than some, of the towns in the state, and was divided into lots the same as towns are. An owner of a parcel of land in it, would have no greater reason to suppose that a person acquiring mere color of title to the whole of it, and taking possession of a tract remote from his, was claiming his, than the owner of a part of a whole township would under the same circumstances. It is well settled that constructive possession of the vacant parts of a whole township, cannot be acquired in that way. *Chandler* v. *Spear*, 22 Vt. 388. And it now appears that such possession of unoccupied lots on a division should not be so acquired. *Jackson* v. *Woodruff*, 1 Cow. 276 ; *Jackson* v. *Richards*, 6 Cow. 617 ; *Sharp* v. *Brandow*, 15 Wend. 577. The ruling of the court, made somewhat *pro forma* as is understood, that the undisputed-evidence of the acts detailed gave the plaintiffs constructive possession of the land where the alleged trespass was committed, is, therefore, erroneous.

The exception to the manner in which the court answered the questions of the jury and gave further instructions when the jury came into court, and made inquiries, is not well founded. It is objected that the court did more than to answer the inquiries. But that was the right of the court ; and if it appeared that more than categorical answers was necessary, to keep the issues to be decided correctly before the minds of the jury, it would be the duty of the court to give such further instructions as would be necessary to that end. In this case the instructions beyond the answers were very proper. The evidence on the part of the plaintiffs tended to show that the defendant procured workmen to cut hoop-poles at the very place they were cut. That of the

defendant, that he did not procure them to be cut there, nor on the land plaintiffs claim, at all. The question to be settled by the jury was, whether the defendant did so procure the cutting to be done ; and the instructions brought the jury directly to the consideration of that question.

Judgment reversed, and cause remanded.