THE S. C. & I. F. TOWN LOT & LAND CO. v. WILSON ET AL.

1. **Conveyance : CONSIDERATION : ESCROW.** Where a party placed a deed in the hands of another, as an escrow, to be delivered whenever the grantee, a railway company, should erect a depot at a given location, and the company platted the land and paid taxes thereon, but never erected the depot, the road being long afterward constructed and a depot erected by another company, it was *held* the company acquired no title by the deed.

2. ——— : ——— : **ADVERSE POSSESSION.** The platting of the land, and payment of taxes thereon, did not entitle the company to protection by adverse possession.

*Appeal from Hamilton Circuit Court.*

WEDNESDAY, APRIL 9.

ACTION to quiet title to a certain tract of land in Webster City. Both plaintiff and defendants claim title through one Andrew J. Brewer. The plaintiff alleges that Brewer and his wife executed a deed of the land to the Dubuque & Pacific Railroad Company, and deposited it as an escrow in the hands of one W. C. Wilson. It alleges that Brewer was desirous to secure the location of a depot by the railroad company near the premises in question, and executed the deed in consideration of the advantages to be derived from such location; and that the deed was to be delivered by Wilson to the company upon such location being made. The plaintiff further alleges that the railroad company made the location as contemplated, and thereby became entitled to the deed.

It further alleges that the railroad company conveyed the land by mortgage to A. S. Hewitt and others; that the mortgage was foreclosed, and that the plaintiff holds title through the foreclosure sale. The plaintiff also claims to hold title by adverse possession. The defendants deny the location of the depot as alleged, and deny the conveyance of the land by

mortgage, and deny that the plaintiff has acquired title by adverse possession. There was a decree for the defendants. Plaintiff appeals.

*I. N. Kidder*, for appellant.

*Chase & Covil*, for appellees.

Adams, J.—I. The act of the Dubuque & Pacific Railroad Company relied upon by the plaintiff as constituting the location of the depot consisted in making and filing a plat as an addition to Webster City. Upon this plat certain ground was marked "depot ground." It is insisted that this paper location of depot ground was a location of the depot within the meaning of Brewer's agreement, under which he executed and deposited the deed, and that it is immaterial whether the company ever built a depot upon such ground. The fact is it never did. In our opinion the condition to be performed by the company was not performed, and that it acquired no title to the land.

1. CONVEY-ANCE: consideration: escrow.

We ought, perhaps, to observe here that a conditional resolution was passed locating the depot grounds, but that was evidently not such a location of the depot as to entitle the company to a deed, and we do not understand the plaintiff as seriously insisting that it was.

The point more especially relied upon is that a depot was finally built precisely where Brewer had provided in his agreement that it should be built. It is true that it was not built by the Dubuque & Pacific Railroad Company, with whom Brewer's agreement was made, but it was built by a company that claimed to be a successor to the right of that company, both in the railroad and in the land in question. Thirteen years after Brewer's deed was executed and deposited, and after the land in question had passed to the defendants, or a part of them, the Iowa Falls & Sioux City Railroad Company completed the road as far west as Webster City, and built the

depot where Brewer provided in his agreement it should be built. The plaintiff claims through that company; but in our opinion that company never succeeded to any rights of the Dubuque & Pacific Railroad Company in the land in question. In the first place we think that the Dubuque & Pacific Railroad Company had no rights which it could convey, and in the second place we think it never attempted to convey any. What right did it have? It not only never performed the condition upon which the deed was to be delivered to it, but it never agreed to perform it. Whatever rights, therefore, it had, they fell short of a transferable interest.

Whether there was an attempt to make a transfer depends upon whether the land in question was embraced in a certain mortgage. The property conveyed was described as "roadway, stations, depot land, and other land appurtenant to the railroad;" but there was expressly reserved "all lands not included in the grant of public lands, and not necessary for the uses and purposes of the railroad, and the depots and the right of way." We think that the land in question did not come within the general terms of the grant, and would not have passed even if there had been no reservation. The evidence shows that the land was laid out into town lots, and held for town purposes and not railroad purposes.

II. The Dubuque & Pacific Railroad Company platted the land in controversy, in connection with other land, in 1859. At that time the company entered upon the land and staked off the lots. The plaintiff claims that the company thereby took possession. After that it does not appear that the company or any person claiming under it occupied the property or exercised any acts of ownership over it. The plaintiff and those under whom it claims paid taxes on the property for several years. The plaintiff's claim of adverse possession rests upon such payment. To this it may be said that the property had been assessed as lots, notwithstanding the platting was done by a company who had no right to plat it, and the taxes had been paid upon the prop-

erty as lots. But, disregarding the fact that the platting was unauthorized and the assessment irregular, we think that the plaintiff can derive no advantage from the payment of taxes. The only act of occupancy was the staking off the lots. But that was done by the Dubuque & Pacific Railroad Company, and that company, as we have seen, never undertook to convey its interest or supposed interest in the property. The plaintiff, therefore, does not connect itself with any adverse possession. The payment of taxes is mere evidence of a claim and its extent. It is not of itself adverse possession.

We think that the judgment of the Circuit Court must be

AFFIRMED.