AARON H. Goodwin *vs.* ALBION JACK and another.

*Evidence.   Ancient records and plan admitted.*

The plaintiff offered in evidence ancient books, purporting to be the records of the original proprietors of Pejepscot (now Topsham) for more than a century, now produced from the archives of the Maine Historical· Society, and they were received against the defendants' objection : *held,* that they proved themselves, and were admissible without extraneous evidence of their authenticity, or of the organization and meetings of the proprietors, inasmuch as no suspicion was cast upon them, but their contents bore internal evidence of verity, the organization had long ago ceased to exist, and there is no person to represent it, or interested in it, and no authorized custodian of its records.

Copies of letters and memoranda of the agents and officers of the proprietors, relating to their affairs, found extended upon these records among their proceedings, bearing internal evidence of genuineness, are admissible without evidence of the existence, loss, or destruction of the originals; since after the lapse of so long a time, it may well be presumed that the originals are lost, and that the record contains a faithful transcript of them.

Goodwin v. Jack.

By these books it appeared that John Merrill was employed by the proprietors to draw a plan of the township from actual survey, in 1768; by parol evidence it was shown that a plan, purporting to be his, was, several years ago, in the possession of a gentleman since deceased, but could not now be found; and that a plan produced, purporting to be certified as a copy by said Merrill, was a true copy of his original plan; *held*, that such copy is competent to prove any fact which could be established by the original.

In an action of trespass *quare clausum* the evidence relating to the *locus in quo* supported the declaration as to the number of the lot, and of the acres it contained, and the town in which it is situated, but in a single other particular it failed to correspond; *held*, that there was no error in an instruction given to the jury that they might, if in other respects satisfied of the truth of the facts alleged in the declaration, find for the plaintiff, notwithstanding the failure to prove this element of the description of the close upon which the trespass was committed.

ON EXCEPTIONS.

TRESPASS *quare clausum* for breaking and entering the plaintiff's close in Topsham and cutting down a tree. The real purpose of the suit was to determine the location of the plaintiff's line between himself and Mr. Joseph L. Jack, father of the defendants, who admitted the cutting and justified it as done by the direction of said Joseph, as the owner of the premises.

To establish his title, Mr. Goodwin offered the old records of the Pejepscot proprietors, and the copy of a plan of the township made by John Merrill in 1768, the facts relative to which are fully stated in the opinion, and both were admitted against the objection of the defendants.

After identifying the *locus in quo* as No. 19, containing fifty acres, &c., the plaintiff's declaration alleged that it was "called the fifty acre lot, being the same set off to Catherine W. Merrill, &c." There was no proof of this last averment, and the defendants claimed that, for this reason, they were entitled to a verdict; but the justice presiding instructed the jury that, if the plaintiff had shown himself otherwise entitled to maintain his action, he might recover without having proved that that part of his description of the premises was correct. The jury gave the plaintiff a verdict for nominal damages, and the defendants filed exceptions and moved for a new trial; but no question of law arose upon the motion.

*Tallman & Larrabee*, for the defendants.

*W. Gilbert* and *Henry Orr*, for the plaintiff.

DICKERSON, J. The first error alleged in the bill of exceptions is the admission by the presiding justice of certain ancient books entitled "Pejepscot Records."

Courts have felt obliged from necessity to depart from the strict rules of evidence in the admission of ancient writings, documents, books and records, to prove the existence of the facts they recite. The rule of evidence requiring the testimony of the lawful custodian of books of record offered in evidence, that they are of the description claimed, before they are admissible, has repeatedly been relaxed in the case of ancient books of record of proprietors of land. In such instances, such books have been held to prove themselves. When ancient books, purporting to be the records of such proprietary, contain obvious internal evidence of their own verity, and there is no evidence of the present existence of the proprietary or of any person representing it, or any clerk or other person authorized to keep the records, they are admissible in evidence without proof of the legal organization of the proprietary, or of its subsequent meetings. *King et als. v. Little et als.*, 1 Cush., 440; *Rust v. Boston Mill Corporation*, 6 Pick., 165; *Monumoi Great Beach v. Rogers*, 1 Mass., 159; *Pitts v. Temple*, 2 Mass., 538; *Tolman v. Emerson*, 4 Pick., 160.

The books offered in evidence purporting to be "Pejepscot Records," cover a period of more than a hundred years and contain strong internal evidence of their own verity. There is no evidence to impeach their genuineness, or of the present existence of the proprietary, or of any person authorized to represent it, or having any proprietary interest therein. Previous to the decease of John McKeen of Brunswick, they were in his possession, he claiming title to certain lands under the Pejepscot Proprietors. At the time of the trial they were in the possession of the librarian of the Maine Historical Society. Time has swept away all who could have testified to the original organization of the association, so long

known as "Pejepscot Proprietors." To require such evidence, or even parol testimony in the ordinary way; that the books offered are what they purport to be, would be practically to exclude these records from being used as evidence in any case affecting the title to any land originally derived from those proprietors.

Under these circumstances, we think that the books offered are to be regarded as proving themselves to be what they purport to be, —"Pejepscot Records,"—and that they are competent evidence of the doings of the "Pejepscot Proprietors," without parol or other evidence of their original organization, or the regularity of their subsequent meetings; they are, in fact, the very best evidence of those facts that is attainable.

It appears from these records that, at a meeting of the proprietors held February 12, 1767, by adjournment, it was voted, "that the plan of the township of Topsham be completed in order for a division among the proprietors, and that Belcher Noyes be directed and empowered to see it effected in the best manner.

The same book contains a record of Noyes' letter to Merrill, of Merrill's attestation of the genuineness of that letter, of his acceptance of the trust committed to him by Noyes in his letter, and the "Field book of the survey as drawn by Merrill, on the 23d and 26th of July, 1768," in pursuance of his instructions from Noyes.

These entries were made by authority of the party interested to preserve and perpetuate the evidence of these transactions, contained in letters and other fugitive papers, liable to be lost or destroyed. They were made, too, among the solemn records of the doings of the meetings of the proprietors, where they would be most likely to escape the fortuities of accident and mischance, and the ravages of time. Being found, as we have seen, among records that prove themselves, after the lapse of more than a hundred years, these entries may properly be regarded as primary evidence, the presumption being that the originals have long since been lost or destroyed, and no shadow of suspicion resting upon their authenticity. Moreover, there does not appear to be any

known place to search for the originals, or any living witness by whom to prove their loss or destruction. They are, therefore, the best evidence that exists, of the facts they contain.

The next objection is to the admission in evidence of a copy of what purports to be John Merrill's plan of the township of Topsham. This objection is two-fold : 1st, That no such original plan is proved to have been made; and 2d, that if it is, there is no sufficient evidence of the loss of the original, or that the plan offered is a copy.

Did John Merrill make a plan of the township of Topsham ? We have already seen that the proprietors by their vote of February 12, 1767, ordered "a plan of the township of Topsham to be completed," and "directed and empowered Belcher Noyes to see it effected in the best manner ;" that Noyes, by his letter of October 21, 1767, to John Merrill, authorized him to perform that work "by a regular survey ;" that Merrill accepted that trust, on the same day, and returned "A Field Book of the survey of the respective divisions of the lots in the township of Topsham, as drawn by him the 23d and 26th of July, 1768." It further appears that at a meeting of the proprietors on the same 26th of July, 1768, Merrill's account for surveying the township of Topsham was allowed, and Belcher Noyes was authorized to execute a deed of certain land to Merrill in payment of his services, which was done August 5, 1768, the deed specifying that it was given "in payment for surveying the township of Topsham."

From the declared purpose and acts of the proprietors, the directions of Noyes to Merrill, and Merrill's doings, it is reasonable to conclude that a plan of the township of Topsham was made by Merrill. Indeed, the certificate of Merrill upon the copy offered, in substance, that the original plan was drawn "at the request of the proprietors of said Topsham," confirms this conclusion ; and though this certificate bears date July 21, 1786, instead of 1768, we think it is clear from the dates of the several transactions touching this subject, that the copyist inadvertently transposed the last two figures, writing 86 instead of 68. By making

this correction, the drawing of the plan becomes cotemporaneous with the survey, and the extension of the field notes upon the proprietor's records, and consistent with their declared purposes, and Noyes' directions to Merrill.

But if there could be any doubt as to whether Merrill ever drew a plan of Topsham, it is removed by the testimony that such a plan was seen some twenty-five years before the trial, in possession of John McKeen, who claimed to have an interest in certain land derived from the Pejepscot Proprietors, and with whom was, also, found their records, including the field book. It further appears in evidence, that the original plan could not be found in possession of the family of McKeen after his decease, nor in the archives of the Maine Historical Society, where the other muniments of the proprietors were deposited.

We think the plaintiff has placed himself in a situation to introduce a copy of Merrill's plan of Topsham, and in view of the strong internal evidence borne upon the face of the paper offered, of its identity with the original, on the testimony that "it is the same as the original," we think it was properly admitted in evidence as a copy of Merrill's plan.

The objection to the court's instructions to the jury that the action might be maintained, though a part of the description of the premises in the declaration was not sustained by the evidence, is obviated by the fact that, in one of the counts, the *locus in quo* is described as "land of the plaintiff situated in Topsham, containing about fifty acres." There being no demurrer to that count, and the defendants having pleaded to it, the action might at least be sustained on that count. But we think the objection cannot be sustained on any ground. The same particularity of description is not required as in criminal cases. In the other count in the writ the *locus in quo* is alleged to be "a fifty acre lot," "numbered 19" "in the town of Topsham." If the *locus* proved conformed to the declaration in these several respects, the jury would be authorized to return a verdict for the plaintiff, though it should not answer to the description in some other respects.

Our conclusion is, that the rulings and instructions of the presiding justice afford no legal ground of exceptions, and that there is nothing to warrant setting the verdict aside on the motion.

*Motion and exceptions overruled.*

APPLETON, C. J., CUTTING, DANFORTH, VIRGIN and PETERS, JJ., concurred.