DICKINSON, Respondent, vs. SMITH and another, Appellants.

*November 26—December 13, 1907.*

*Boundaries: Surveys: Plats: Ejectment: Title to support action: Inconclusive findings of jury: Ancient deeds: Ambiguity: Prima facie title: Ancient survey and plat: Best and secondary evidence: Certificate of surveyor: Conclusiveness.*

1. An original survey and plat, where the starting point thereof is definitely described and easily located, must control the location of boundary lines between those owning parts of the lands platted.

2. In ejectment a plaintiff must recover, if at all, on the strength of his own title; hence a finding of the jury that the land in question is not a designated part of an original plat, according to S.'s map of a city, is defective in that it results merely in a conclusion that the land does not belong to the defendant, without finding whether or not it belongs to the plaintiff, and inconclusive in that it merely finds that S. did not so represent things on his map.

3. In an action of ejectment the verdict was indefinite and inconclusive in that it found that defendant did not own the land in question and failed to find that it belonged to plaintiff. The verdict was supplemented by findings, purporting to be based upon undisputed evidence, to the effect that plaintiff was the owner and entitled to possession of the premises, and that the defendant unlawfully withheld possession thereof. *Held*, notwithstanding the defective verdict, if there was competent uncontroverted evidence showing a *prima facie* right of recovery in the plaintiff, all other errors assigned by defendant, and stated in the opinion, became immaterial and the judgment should be affirmed.

4. In an action of ejectment there was in plaintiff's chain of paper title a deed, dated and recorded more than twenty years prior to the commencement of the action, in which inhered some ambiguity of description, although subsequent deeds in the chain contained unmistakable descriptions. There was in evidence deeds from the heirs of the grantor in the earlier deed, apparently executed for the purpose of clearing up the ambiguity, although executed since the commencement of the action. *Held*, under all the evidence, stated in the opinion, that plaintiff had shown a *prima facie* title.

5. Sec. 15, ch. 387, P. & L. Laws of 1870, empowered the common council of A., by resolution, to authorize the city surveyor to make a new and accurate survey and plat of the city, which plat, with the approval of the common council indorsed thereon by the city clerk and with the corporate seal attached, was required to be filed in the city clerk's office, and an attested copy filed and recorded in the office of the register of deeds of the county. The act further provided that such survey, when so established and recorded, should be *prima facie* evidence of the facts therein set forth. While this act was in force such survey and a map thereof was made, and the act was subsequently incorporated into an act codifying, consolidating, and amending the charter of A. *Held*, although under the act of 1870 it might have been necessary to prove a prior resolution of the common council authorizing the survey and map, yet the production, at

the time of the trial of an action in ejectment involving lands shown on the map, of a map more than thirty years old, purporting to bear the approval of the common council over the signature of the city clerk and to be sealed with the seal of the city, presented an ancient document which afforded presumptive proof that such authorization by resolution had taken place.

6. In such case, where a copy of the map was shown to have come from the custody of the register of deeds, to be in common and general use and publicly recognized as a true copy of the map made under ch. 387, P. & L. Laws of 1870, was apparently of the same age as the original, and made by a process of mapmaking then in vogue, it was properly received in evidence after proof of the loss of the original.

7. In such case the statement in the surveyor's certificate that the survey and map was correct, or nearly so, is *held* not to destroy the effect given by the statute to the survey as *prima facie* evidence.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

The appeal is from a judgment rendered in an action of ejectment brought to recover a strip of land about three feet wide and sixty feet long claimed by the respondent to be a part of lot 1 in block H in the First ward of the city of Appleton, and by the appellants to be a part of lot 3 in the same block. The land in question lies in government lot No. 1, section 26, township 21 north, of range 17 east, which, with other adjoining lands in section 25 of the same town and range, on September 15, 1849, was platted by George W. Lawe as the town of Lawesburg and is now a part of the city of Appleton. What is now called lot 1, block H, was by Lawe's plat lot 12 and the west eight feet of lot 11 in block 12, and what is now called lot 3 in block H was by Lawe's plat lot 11 (except the west eight feet thereof) in block 12, plus fifteen feet added on the easterly side and taken from Lawe street. By Lawe's plat lots 11 and 12 in block 12 were each indicated as sixty feet in width, 117 feet in length, extending east and west, lot 11 fronting on Lawe street and lot 12 fronting on Division street, and

both lots abutting in the middle of the block. Lawe street still retains its name and runs substantially north and south. Division street is now known as Union street, is the next street west of Lawe street, and runs substantially parallel therewith. The certificate to Lawe's plat is as follows:

"On the west by a line commencing at a point on the Fox river forty-three rods and ten feet west of the line which divides section 25 from 26; thence running north 102 rods 14.75 feet to a point on the north side of . . . Said line being the center of a common street herein named Division street."

The other boundaries are then given. The streets on Lawe's plat, with the exception of Wisconsin avenue, now College avenue, are sixty feet wide. In 1872 John Stephens, then assistant city surveyor of the city of Appleton, resurveyed the city, including the Lawesburg plat, which he declared in said resurvey to be bounded on "the north by the east and west quarter-section line of section number 25, on the east and south by the river, and on the west by a line commencing where the aforesaid quarter line intersects the center line of Drew street; thence south to the south line of College avenue; thence east to the first sixteenth line; thence south along said line to the river." This not only carried the east and west quarter-section line of section 25 westwardly over into section 26, but carried it several hundred feet west of the west line of Lawe's plat which ran along the center of Division, now Union, street; but after following Drew street, which was entirely west of Lawe's plat and in a different plat, south to the south line of College avenue, returned east substantially along the south line of College avenue, not to a north and south line lying forty-three rods and ten feet west of the section line between sections 25 and 26 as fixed by Lawe, but to the first sixteenth line and thence south to the river. The Stephens survey and plat appears to have been deposited with the register of deeds of Outagamie county in 1872 by attaching it

between the leaves of a plat book and noting it in the reception index, and it has long since been worn out and lost, but copies are in existence framed and arranged for wall maps of the city of Appleton, and one of these was offered in evidence after proof of the loss of the original. That plat contains the following certificates:

"I, John Stephens, assistant surveyor of the city of Appleton, do hereby certify that this map represents the lines and boundaries of the streets, alleys, avenues, highways, public grounds, wharves, docks, blocks and lots, and of all out and in lots within the city of Appleton as surveyed and platted by me, which survey and plat is in all respects correct or nearly so. [Signed] JOHN STEPHENS, Assistant City Surveyor."

"We hereby certify that this map of the city of Appleton as surveyed by John Stephens, assistant surveyor of said city, was presented to the common council of the city of Appleton at its regular meeting on the 6th day of April, 1872, and was by unanimous vote of said council duly approved in all respects. Witness our hands and the corporate seal of said city of Appleton this 6th day of April, 1872. [Signed] G. M. RICHMOND, Mayor. A. W. BALLARD, City Clerk."

The plaintiff's title to lot 12 and the west eight feet of lot 11 in block 12 of the Lawesburg plat comes down from Lawe through mesne conveyances to Sarah B. Story, who on May 12, 1882, conveyed to Harriet E. Miles by deed describing the property as "lot numbered 12 in block numbered 12 of the original plat of Lawesburg as recorded in the office of the register of deeds in and for the county of Outagamie aforesaid. Said foregoing premises being designated and described as lot numbered 1 of block H, First ward, city of Appleton, as per John Stephens' map of said city published in 1872." Harriet E. Miles conveyed to Charles S. Dickinson, describing the property as lot 1 in block H of the Lawesburg plat in the First ward of the city of Appleton, according to John Stephens' map, and Charles S. Dickinson conveyed to the plaintiff by deed describing the property as lot 1 in block H,

Lawesburg plat, First ward, in the city of Appleton, Wisconsin.

Defendant claimed title under A. L. Smith, who claimed under a deed executed in 1867 purporting to convey lot 11, block 12, according to the recorded plat of the village of Lawesburg in the city of Appleton, less the west eight feet of said lot. It was shown without objection by the plaintiff that the city had before 1872 surrendered fifteen feet on the west side of Lawe street, and that according to the Stephens plat lot 1 of block H, which included lot 12 and the west eight feet of lot 11 of block 12 of the Lawe plat, was 126.56 feet in length east and west along the north boundary, and lot 3 of block H, which included the fifteen feet of Lawe street and all of lot 11 in block 12 of the Lawe plat except the west eight feet thereof, was 127 feet in length east and west along its north boundary. A survey made by N. M. Edwards, based on the Stephens plat and survey without reference to the Lawe plat, and further based upon the proposition that Union street, formerly Division street, from its intersection with College avenue toward the river, ran south twelve minutes east instead of due south, showed the disputed strip to belong in lot 1 of block H of the Stephens plat.

For the appellants there was a brief by *Turner, Hunter & Goff,* and oral argument by *C. F. Hunter.*

*Paul V. Cary,* for the respondent.

TIMLIN, J. The original survey and plat of Lawesburg must control the location of the boundary between the parties. The starting point of this survey and for any resurvey thereof is definitely described and easily located. The section line between sections 25 and 26 is a known north and south line running through blocks 3, 6, 11, and 13 of Lawe's plat near their eastern end as displayed on Stephens' map. A point on the Fox river and forty-three rods and ten feet west of this section line is easily located and forms a definite starting

point, and from this point we run north to find the west line of
the plat and the center of Division street, now Union street;
but the defendants offered no proof of any resurvey, confin-
ing their defense in this particular to criticism of the Ed-
wards survey based on the Stephens survey and map of 1872
and put in evidence by the plaintiff. ⸱ The question relative to
the location of this boundary was submitted to the jury and
answered in the following form:

"Is the strip of land which is the subject of this action a
part of lot 3, block H, of the Lawesburg plat in the city of
Appleton, according to John Stephens' map of said city?
A. No."

Bearing in mind that said lot 3 was used to indicate the
defendants' land, we have in an ejectment action, where the
plaintiff should recover, if at all, on the strength of his own
title and not on the weakness of his adversary's title, a finding
merely that the disputed strip did not belong to the defend-
ants, without finding whether or not it belonged to the plaint-
iff. The scope of this finding is still further limited in that
it only finds that the disputed strip was not part of lot 3
according to "John Stephens' " map. This is merely to find
that John Stephens did not so represent things on his map.
The verdict in this respect is defective and inconclusive. The
form of verdict in ejectment is prescribed by statute. Sec.
3084, Stats. (1898). But the court supplemented this ver-
dict with its finding purporting to have been based upon un-
disputed evidence and to the effect that the plaintiff was the
owner in fee simple of the premises described in the com-
plaint and of the whole thereof and entitled to the immediate
possession, and that the defendants unlawfully withheld pos-
session thereof. There is also a finding describing the stakes
or marks set to indicate the true boundary between the par-
ties. If, therefore, notwithstanding the failure to locate the
boundary in question according to the lines of the original
plat of Lawesburg and notwithstanding the indefiniteness of

the verdict there was competent uncontroverted evidence show-
ing a *prima facie* right of recovery in the plaintiff, all other
errors assigned by appellants become immaterial and the
judgment must be affirmed.

So far as paper title is concerned, we must hold that the
plaintiff made a *prima facie* title to lot 1, block H. Some
ambiguity inheres in the deed of May 12, 1882, from Miles
to Story found in plaintiff's chain of title, but that deed
bears date and was recorded more than twenty years prior to
the commencement of this action, and subsequent deeds in
plaintiff's chain of title from the grantee, Story, and down
to the plaintiff, containing unmistakable descriptions, serve
to clear up this ambiguity, if it can be considered an ambi-
guity. Besides, deeds from the heirs of Story to plaintiff
were properly in evidence, although executed since the com-
mencement of this action, because apparently executed for
the purpose of clearing up the alleged ambiguity in the said
deed of May 12, 1882. *Hutchinson v. C. & N. W. R. Co.*
41 Wis. 541. We must therefore hold that the plaintiff
showed a *prima facie* title to lot 1 in block H.

Next it is uncontroverted that lot 1 in block H, according
to Stephens' map, represents lot 12 and the east eight feet of
lot 11, all in block 12 of the original plat of Lawesburg. But
it required something more than this in order to show that
the description last mentioned included the strip of land in
dispute. Upon this last point the plaintiff offered evidence
of a survey by one Edwards based upon the Stephens survey,
plat, and monuments, and also offered in evidence a copy of
the Stephens plat or map. By sec. 15, ch. 387, P. & L. Laws
of 1870, the common council of the city of Appleton was em-
powered by resolution duly passed and entered on its minutes
to authorize the city surveyor, or such assistant surveyor as
they might appoint, to make a new and accurate survey of the
lines and boundaries of all the streets, alleys, avenues, high-
ways, public grounds, wharves, docks, blocks, and lots, es-

tablishing such permanent landmarks in each ward or in any one ward, as the common council might require. The council was further empowered to cause an accurate map or maps, plat or plats, of such survey to be made and certified to by the surveyor or assistant surveyor, which map or plat should have the approval of the common council indorsed thereon by the city clerk with the corporate seal of the city attached. This map was required to be filed in the office of the city clerk and an attested copy thereof filed and recorded in the office of the register of deeds of Outagamie county. The law then provided that "such survey and landmarks when so established and recorded shall be *prima facie* evidence in all courts and places of the facts therein set forth." This law was in force in 1872 when the Stephens survey and plat was made, and this law later became sec. 15, subch. XI, ch. 441, Laws of 1885 (vol. 2), entitled "An act relating to the city of Appleton, and codifying, consolidating and amending the act of incorporation, and all acts amendatory thereof," etc. The Stephens survey and plat were made and the Stephens landmarks set in place apparently in attempted compliance with this law.

If the admissibility of the Stephens plat and survey depended alone upon sec. 15, ch. 387, P. & L. Laws of 1870, it would probably be necessary to prove a prior resolution of the common council authorizing it and authorizing the establishment of permanent landmarks. But the plat and survey certificates and records being more than thirty years old were what is known in the law as an ancient document, and purported to bear the approval of the common council over the signature of the city clerk, and to be sealed with the seal of the city as required by the statute above referred to. This last certificate was authorized only in case of a survey and map made pursuant to a preliminary authorization by the common council, hence affords proof presumptive in the case of an ancient document that such authorization had taken

place. *Randall v. Rovelstad,* 105 Wis. 410, 424, 81 N. W. 819, and cases cited; 3 Wigmore, Ev. § 2138 *et seq.; Whitman v. Shaw,* 166 Mass. 451, 44 N. E. 333; *Goodwin v. Jack,* 62 Me. 414; *St. Louis Public Schools v. Erskine,* 31 Mo. 110; *Gibson v. Poor,* 21 N. H. 440; *Whitehouse v. Bickford,* 29 N. H. 471. The Stephens map with its annexed certificates was deposited in the office of the register of deeds of Outagamie county in 1872, as shown by the entries in the reception index, but was merely attached to one of the pages of a plat book of that office and has long since been worn out and lost. No proceedings under sec. 661*d,* Stats. (1898), to re-establish this plat appear to have been taken. Whether it was filed in the office of the city clerk does not appear, but it does appear that Stephens made such survey and plat and that he set monuments or landmarks, and that copies or prints of such plat made by Stephens were in use, one of them in the office of the register of deeds of Outagamie county, and this copy was offered in evidence. It therefore comes from the custody of the register of deeds, is in common and general use and publicly recognized as a true copy of the John Stephens plat, and the copy itself is apparently of the same age as the original, and is rather a print made by the process of map-making then in vogue than a copy. It was properly received in evidence after proof of the loss of the original. *Dodge v. Briggs,* 27 Fed. 160; *Price v. Woodhouse,* 3 Exch. 616; *Tucker v. Wilkins,* 4 Sim. 241; *Smith v. Cavitt,* 20 Tex. Civ. App. 558, 50 S. W. 167; *Gibson v. Poor,* 21 N. H. 440, 447. The certificate by John Stephens to his map states that the survey and plat is correct or nearly so. We do not think this can be held to destroy the effect given by statute to this survey as *prima facie* evidence. The subject matter of the certificate must be considered. In the field mathematical accuracy in surveys or resurveys is generally unattainable. The landmarks established by Stephens and identified by Edwards must by force of this statute be con-

sidered correct monuments properly located until the contrary is shown. By giving the Stephens plat, survey, and landmarks this legal quality, the Edwards survey based thereon made a *prima facie* case for recovery by the plaintiff, and in the absence of any countervailing evidence on the part of the defendant the circuit court was right in finding for the plaintiff.

*By the Court.*—The judgment of the circuit court is affirmed.

