CHANDLER and others, Appellants, vs. MUNKWITZ REALTY &
    INVESTMENT COMPANY and others, Respondents.

*December 6, 1911—January 9, 1912.*

*Wills: Probate: Sale of land by executor: County courts: Imperfect
ancient records: Presumption of regularity: Notice of hearing:
Proof.*

1. After the lapse of sixty years, and upon proof that the records
   of the probate court were carelessly and imperfectly kept at
   the time of the transactions in question, and upon evidence
   showing other proceedings in the same matter, it is presumed,
   in support of a title founded on an executor's deed, that the
   probate judge knew the law and did in fact appoint a guardian
   *ad litem* for minor heirs before admitting the will to probate,
   and did enter an order requiring the executor to file a bond
   before entering upon the duties of his trust, and duly issued
   letters testamentary to him after he had qualified, and that
   the proceedings in the probate court were regular, although
   these facts did not appear from the records or files of that
   court produced at the trial.
2. Sec. 18, ch. 66, R. S. 1849, did not require personal service of
   notice on the parties in interest of the hearing upon an appli-
   cation to admit a will to probate, but service by publication
   was sufficient; and under sec. 19 the will might be proved, in
   the absence of a contest, by the testimony of one of the sub-
   scribing witnesses.

'APPEAL from a judgment of the circuit court for Milwau-
kee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

William Goulding died testate in the month of June, 1850,
and at the time of his death was the owner of certain real
estate and personal property situated in Milwaukee county,
Wisconsin. Decedent left surviving him his widow and three
infant children. Two of the children died while still minors
and left no issue. The widow died November 27, 1879.
William Malcolm Goulding, one of the children of the de-
cedent, was born some time between the years 1845 and 1849,
and died insane September 13, 1906, unmarried and intestate.

The will referred to contained the following provisions:

"I give and devise all of my real estate wherever and however situate and all my personal estate of what nature or kind soever unto my beloved brother George Goulding in trust for the payment of my just debts and of the residue after the payment thereof and the necessary expenses in the execution of the trusts herein created to hold unto him the said George in trust to and for the use of my wife and children, with full ample and perfect power unto the said George to sell and dispose of all and singular my real and personal estate and proper deeds of conveyance therefor to execute and deliver and upon such terms and in such manner as unto him shall seem meet, and I do appoint the said George executor of this my last will and testament with the authority and power aforesaid together with such authority and power as he would have as executor aforesaid. It is my will that the estate aforesaid devised and the property aforesaid in trust given unto the said George in trust aforesaid shall be by him applied after the payment of my just debts to the suitable maintenance and support of my wife and children and in the tuition of my children during their minority and so soon as they may arrive at full legal age the equal share of my estate after application thereof to the uses aforesaid be distributed to the child becoming of age from time to time as my said children shall so arrive at maturity, reserving nevertheless in such division and distribution an equal share unto my wife with said children, that is to say a share equal to one child's share. I do commit the tuition and custody of my children unto my beloved wife and do direct my executor to pay over to her from time to time such sums of money and to allow unto her such of my personal property as she shall deem necessary for the support of herself and my said children and for the tuition of said children."

This will was admitted to probate and George Goulding assumed to act as executor and trustee under the will. Among other things the court found that the probate court of Milwaukee county on July 15, 1850, made an order reciting that the last will and testament of William Goulding had been delivered into the office of the probate court, and fixed Au-

.gust 9th following as the time appointed for the proof of the will, and further provided for publication of such order in a newspaper in said county; that on August 9, 1850, pursuant to said order, proceedings were had in the county court by which the testimony of one of the witnesses to the will was taken, from which proof it appeared that said will was executed about two weeks before the death of said William Goulding, who was then twenty-five years of age; that on said 9th day of August an order was made by the said court admitting said will to probate and adjudging that it was duly proven and should stand as the last will and testament of said William Goulding; that the executor named in said will filed his written consent to act and made the necessary oath, which consent and oath were filed August 15, 1850; that said executor gave a bond, which was approved by the court on August 15, 1850, but that there appeared to be no entry as to the giving of such bond or the approval thereof in any book of record in said court; that there was no record in the probate court of the issuing of letters testamentary; that the parcel of land involved in this suit was appraised at $556.25; that at various times from June 28, 1853, the widow, Sarah M. Goulding, filed certain petitions in said probate court reciting among other things that she had by said will been appointed guardian of the minor heirs of said deceased, and praying for an accounting from the executor and for an allowance, and that certain orders were made pursuant to such petitions; that on the trial no evidence was produced of the appointment of any guardian *ad litem* for the minor heirs of the deceased in said probate court; that the records and proceedings of said court for some time subsequent to 1850 were not fully or accurately kept, and that certain of the proceedings were filed in the estate of said deceased, but no entry appears to have been made in any record book appearing now to be in existence in said court; that no fraud was committed by any one interested in said probate proceedings by in any

manner concealing from said probate court the existence of
the minor children of the deceased, but on the contrary said
fact was before the court at all of the proceedings therein
taken; that in the bonds given by the executor, which were
approved by the court, there were recitals of the issuing of
letters testamentary to George Goulding, although there is no
record evidence other than that of the issuing of the same;
that on February 9, 1856, George Goulding as executor con-
veyed by warranty deed to John Plankinton the land involved
in this action, which deed was thereafter duly recorded; that
there is no evidence of any fraud on the part of the grantor
or of the grantee in such conveyance; that immediately after
the execution of said deed the facts in connection with such
conveyance and the terms thereof were all presented to the
county court upon a petition by the widow, and that said ex-
ecutor appeared at the hearing before said court and was ex-
amined in relation to the same and that the widow appeared
in person and by counsel; that after said hearing the county
court required said executor to file an additional bond; that
from time to time subsequently thereto some payments were
made by said John Plankinton on account of the purchase of
said property; that at the time of the commencement of this
action the title to the lands in controversy was in the defend-
ants and that such premises were occupied by the defendants
and their grantors continuously since the year 1856; that the
evidence in this case is not sufficient to establish the fact that
on the 9th day of August, 1850, or on the 19th day of Febru-
ary, 1856, William Malcolm Goulding was feeble-minded or
mentally incompetent; that this action was not brought until
the 3d day of December, 1909, and after the period limited
and prescribed by the statutes of the state of Wisconsin within
which any action might be brought to enforce any rights of
the plaintiffs in the premises.

As conclusions of law the court found that the proceedings
of the probate court of Milwaukee county in the matter of

the estate of William Goulding admitting said will to probate
were regular and proper; that the deed from George Goulding
as executor to John Plankinton, made in 1856, was duly and
regularly made and executed and the proceedings had ante-
cedent to the making of the same were regular, and that the
deed was valid and binding on all persons having any interest
in said estate, and that the defendants were the owners of the
lands described in the complaint and were entitled to judg-
ment dismissing the complaint.

The action was brought by the plaintiffs as heirs at law of
William Malcolm Goulding to recover the property conveyed
to Plankinton in 1856 by the executor of his father's estate,
and plaintiffs appeal from the judgment of the court dismiss-
ing their complaint.

The cause was submitted for the appellants on the brief of
*E. Blewett,* attorney, and *Maurice McKenna,* of counsel, and
for the respondents on that of *Flanders, Bottum, Fawsett &
Bottum,* attorneys for *Munkwitz Realty & Investment Com-
pany, Miller, Mack & Fairchild,* attorneys for *Jos. Schlitz
Brewing Company* and others, and *W. E. Black,* of counsel.

.BARNES, J.  The main contentions of the appellants may
be summarized as follows:

(1) The deed from George Goulding, executor, to John
Plankinton was void because no petition was presented to the
probate court praying for the probate of the will; because
the proof of the will which was offered was insufficient to es-
tablish it; because no guardian *ad litem* was appointed for the
minor heirs of the decedent before the will was admitted to
probate nor thereafter; because no letters testamentary were
ever issued to George Goulding as executor; and because the
probate court did not fix the amount of the bond which the
executor should give, or in fact order him to give any bond.

(2) The invalidity of this deed being established, it is con-
tended that no statute of limitations and no claim of adverse

possession operated to deprive William Malcolm Goulding of his title to the property during his lifetime, for the reason that he was under the disability of minority until at least the year 1866, and that from and after that time he was insane until the time of his death in 1906.

(3) That the action falls within the provisions of sec. 4218, Stats. (1898), and that the plaintiffs herein, who are the heirs at law of William Malcolm Goulding, might bring their action at any time within five years after his death.

The defendants claim (1) that the proceedings in the probate court were regular, and that in any event, after a lapse of nearly sixty years, they should be presumed to have been regular; (2) that the evidence does not show that William Malcolm Goulding was insane at the time he reached his majority or for a long time thereafter, and the court does not so find, and that he lost any rights he might have had, by failure to bring his action within the time limited by law, after he became of age; (3) that the present action is barred because it was not brought within one year after the death of William Malcolm Goulding.   Some other defenses are also urged.

If any one of the above contentions of the defendants is well taken the judgment must be affirmed.   The circuit court found:

"I further find that records and proceedings of said probate court for some time subsequent to 1850 were not fully or accurately kept, and that certain of the proceedings were filed in the estate of said deceased William Goulding, but no entry thereof appears to have been made in any record book appearing now to be in existence in said probate court."

There is ample evidence to sustain this finding.   As a conclusion of law the court found:

"The proceedings of the probate court of Milwaukee county in the matter of the estate of the said William Goulding in admitting the said will to probate were regular and proper."

If the established facts warranted the court in arriving at this conclusion the plaintiffs have no case.   To warrant such

a conclusion this court must be satisfied that the proceedings in the probate court were regular and that either a guardian *ad litem* was appointed for the minors or such appointment was unnecessary; and also that letters testamentary were issued or that the issuance of such letters was unnecessary. The absence of records showing that letters testamentary were issued or that a guardian *ad litem* was appointed constitutes the substantial objections that are urged against the regularity of the proceedings in the probate court. The statute did not require personal service of notice on the parties in interest of the hearing to determine whether the will should be admitted to probate. Sec. 18, ch. 66, R. S. 1849. Such notice might be served and was served by publication. In the absence of a contest the will might be proved under the statute by the testimony of one of the subscribing witnesses. Sec. 19, ch. 66, R. S. 1849.

The court did in fact approve of the bond which the executor gave, both as to form and amount, and the objection that no order was found fixing the amount thereof in advance of the bond being given, is, to say the least, somewhat technical.

Should the court indulge in the presumption that letters testamentary were issued, though no record thereof was found, and that a guardian *ad litem* was appointed, although no evidence of that fact was found either in the records or the files produced in court? This question must be answered in the light of the established fact that the records in the office of the probate judge of Milwaukee county were loosely kept at the time the guardian *ad litem* should have been appointed and also at the time letters testamentary should have been issued. The additional bond given by the executor in 1856 recited as a fact that letters testamentary had been issued.

In *Gentile v. Foley*, 3 La. Ann. 146, a judicial sale of property was made, and after the lapse of nearly thirty years it was sought to set the sale aside because there was no proof that process had been served on one of the parties in interest.

The court held that, in consequence of the notorious want of care in the preservation of public records in the country parishes, the absence of such record evidence when applied to ancient proceedings raises but a remote presumption and one which must be held subordinate to the legal presumption that the judge before whom the proceedings were had did his duty. Citing 1 Greenl. Evidence, p. 19.

In *Gray v. Gardner,* 3 Mass. 399, the court held that after twenty years' acquiescence by the heirs of the intestate in the possession of the real estate of their ancestors, held under a sale by the administrator of the estate, the court will presume that the administrator took the oath and posted the notifications according to law previous to the sale, evidence being given of the license to sell and of the actual sale at auction.

In *Brown v. Wood,* 17 Mass. 68, it was held that where a will had been proved twenty years by the oath of only two of the three subscribing witnesses, without accounting for the absence of the third and without any record of previous notice to the heirs, it would be presumed that a sufficient reason existed for the absence of the third witness, and that the notice required by statute was duly given to the heirs.

In *Giddings v. Smith,* 15 Vt. 344, it was held that as to a will probated in 1781, where no proof was preserved that the statutory notice of the application to admit the will to probate was given to the heirs, the court would presume, after the lapse of a long period of time, that the requisite notice was given. The case was decided in 1843.

In *Brockenborough v. Melton,* 55 Tex. 493, the validity of a sale depended upon whether the party appointed administratrix in the first instance had resigned before another person was appointed administrator in another county. There was no proof of such resignation found in the records or files of the court. It was held that after the lapse of thirty-four years the court would presume that the resignation was regularly made and placed on file, although it could not be found.

In *Hazard v. Martin,* 2 Vt. 77, the court held that where an administrator conveyed a farm subject to the widow's dower, and possession of the two thirds under a deed is held for over thirty years, a presumption of the regularity of the administrator's proceedings prior to his deed arises in favor of the reversion of the dower.

In *Battles v. Holley,* 6 Me. 145, it was held that after the lapse of more than thirty years the authority and qualification of an administrator were presumed from the existence of an inventory and a schedule of claims in the probate office, attested by his oath, and a petition preferred by him to the court of common pleas for license to sell the real estate of his intestate, with the original certificate of the judge of probate thereon, recognizing him as an administrator; the probate records and files of that period appearing to have been loosely kept, and no other vestige of his appointment being discoverable.

In *Lay's Ex'r v. Lawson's Adm'r,* 23 Ala. 377, it was held that where an order of sale made by the orphans' court does not on its face appear to have been granted on the application of the administrator, that fact will be presumed after the lapse of twenty years.

Turning to our own decisions, it is said in *Blodgett v. Hitt,* 29 Wis. 169, that this court would presume that, where the probate court had made an order directing an administrator's sale of land, due notice of the petition therefor was given to the parties interested and that other jurisdictional facts existed, in case the record is merely silent in respect thereto. This language is approved in *Portz v. Schantz,* 70 Wis. 497, 36 N. W. 249. There an affidavit of publication did not affirmatively show that a certain notice was published during the statutory period. It simply might or might not have been so published. The court said that after the lapse of many years it would presume that the publication was regularly made.

In *Randall v. Rovelstad,* 105 Wis. 410, 81 N. W. 819, there was found formal entry of a survey of a highway in a recognized record book of the county, made by an official person, and it was held that, inasmuch as such record should only have been made after certain preliminary steps had been taken, the court after the lapse of many years would presume that such preliminary steps were in fact taken.

*Dickinson v. Smith,* 134 Wis. 6, 114 N. W. 133, presented a situation where the common council of the city of Appleton was authorized by sec. 15, ch. 387, P. & L. Laws of 1870, to have a certain survey made. The statute authorized the city surveyor, under the direction of the common council, to make a new plat of the city, which plat, with the approval of the common council indorsed thereon by the city clerk, was required to be filed in the office of the city clerk, and it was further provided that an attested copy be recorded in the office of the register of deeds. While the act was in force a survey was in fact made. There was no record, however, of any direction of the common council to have such survey made or of any resolution to that effect. It was held that after a lapse of a long period of years the court would presume that the requisite authority was given by the council and that the survey was made under its direction.

In *Strange v. Oconto L. Co.* 136 Wis. 516, 117 N. W. 1023, the record was silent as to whether or not the chairman of a county board voted on a certain resolution which came before the board and which he declared carried, but upon which he was not recorded as having voted when the ayes and noes were called. It was held that after the lapse of about thirty years the court would presume that he voted for the resolution, having declared that it was carried. Unless he did so vote there was not a majority in favor of the passage of the resolution.

In *Olwell v. Travis,* 140 Wis. 547, 123 N. W. 111, the only records found in reference to the laying out of a highway were a petition signed by certain persons and the record of a survey.

This record was supplemented by proof that a highway had been opened substantially along the line of the survey and had been used for about sixty years. It was held that after the lapse of that period of time the court would presume that the persons who signed the petition for a highway were freeholders, and that the town board made the necessary order laying out the same in accordance with the survey, and that all the steps necessary to the laying out of a legal highway were taken.

It would appear that these authorities would amply justify the court in drawing the conclusion of law which it did draw in the instant case.

The search testified to was not of a very thorough character. The evidence showed that there was an accumulation of 27,000 or 28,000 files in the probate office; that sometimes the files in as many as fifteen or twenty different estates were kept in one holder or box; that it had been a common occurrence for different attorneys to be engaged in looking over different files in different estates at the same table, and that it sometimes happened that the files got mixed and the papers from one estate were inadvertently put into the file with papers in some other estate. The custodian testified that in making the search which he did he merely looked into the place where the papers would ordinarily be found. There were two record books produced. In reference to these the custodian said that he had no personal knowledge as to whether they covered all the matters to which they purported to relate, and there is at least some evidence tending to show that another record book was kept at this time which could not be found. The evidence further tended to show that there were a number of orders and original papers in the proceedings in relation to the estate that were found in the office, but of which no record or minute had been made in any of the books produced in court. Among those papers was the consent of the executor to act, the executor's oath, petition for the

appointment of commissioners, the warrant of the commissioners, the inventory and appraisal, the report of the commissioners, the petition of Sarah Goulding filed August 2, 1853, for an allowance for support and maintenance, the order made on this petition, and the petition of Sarah Goulding to require the executor to give an additional bond, and the citation to the executor by virtue of such petition.   The absence of any record of these proceedings would indicate that either the records were kept in a very slovenly manner or that there was some record book kept which was not produced.   Furthermore, it appeared that the widow was dissatisfied with the conduct of the executor.   In 1853 she petitioned the court that he be required to pay her a suitable allowance for maintenance and that he be required to file an account of his doings as executor.   In 1856 she again petitioned the court that the executor be removed for maladministration.   In these proceedings she was represented by an attorney, and there is no suggestion in the motion papers that there was any irregularity whatever about the appointment of the executor or about admitting the will to probate.

Without attempting to lay down any hard-and-fast rule which might prove troublesome in the future, we think the law is and should be, under the facts disclosed by the evidence in this case, that the court after the lapse of sixty years must presume that the probate judge knew the law and in fact did appoint a guardian *ad litem* for the minor heirs before admitting the will to probate, and required the person named as executor in the will to file a bond before entering upon the duties of his trust, and duly issued letters testamentary to him after he became entitled to receive the same, and that the proceedings in the probate court were regular.   It therefore follows that the deed to John Plankinton conveyed good title to the lands therein described.

*By the Court.*—Judgment affirmed.