BARROWS and wife, Respondents, v. KENOSHA COUNTY, Appellant.

*September 9—October 6, 1959.*

For the appellant there was a brief by *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondents there was a brief by *Clarence A. Tennessen* and *Leo E. Vaudreuil,* both of Kenosha, and oral argument by *Mr. Vaudreuil.*

CURRIE, J. The position of the defendant county on this appeal is that the evidence adduced did not rebut the statutory presumption provided in sec. 80.01 (2), Stats., that Wood road was a four-rod road at the time the 1954 improvement of such highway was undertaken. The plaintiffs contend that it did.

The material portions of sec. 80.01 (2), Stats., read as follows:

"UNRECORDED HIGHWAYS VALIDATED, EXCEPTION; GRANTS FOR HIGHWAY PURPOSES, PRESUMPTIVE WIDTH. All highways not recorded which have been worked as public highways ten years or more are public highways, and are presumed to be four rods wide, except . . . ; and in case any such laid-out highways have not been fully and sufficiently described or recorded or if the records have been lost or destroyed the presumption shall be that they were laid four rods wide."

It will be noted that such statute provides for invoking two presumptions as to the width of highways, each being for a width of four rods. The first-stated presumption is applicable to all highways whether originally laid out by the town, established by dedication of the owners, or resulting from user. The second-stated presumption is restricted in application to only those highways which were laid out by a town and has been a part of our statutes since 1885.[1] On the other hand, the first-stated presumption was not enacted until 1951.[2]

Wood road has existed from a time predating the memory of any living person. When Louis J. Barrows purchased his land in 1920, a barbed-wire fence was erected along the west side of the property which fence was six or seven feet to the west of the east line of Wood road as presently improved and some 26 to 27 feet east of the north and south quarter section line. Such fence had existed there for some

[1] Ch. 102, Laws of 1885.
[2] Ch. 380, Laws of 1951.

time and continued until approximately the commencement of the 1954 improvement to the highway. The testimony established that such fence was in existence at least forty-five years. There was also testimony that back in 1908 or 1909 there was also a fence along the west side of Wood road opposite the property now owned by the Barrows. It is conceded that Wood road was worked as a public highway as far back as forty-five years ago, and that such working extended over many years.

We are satisfied that, if Wood road actually was a highway established by user, as found by the trial court, the above recounted testimony as to the existence for forty-five years of the fence along the west side of the parcel now owned by the Barrows would be sufficient to rebut the first-stated presumption in sec. 80.01 (2), Stats., that the width of such highway was four rods. Therefore, the crucial issue on this appeal is whether the trial court's finding, that Wood road is a highway established by user, is against the great weight and clear preponderance of the evidence.

The clerk of the town of Somers testified that he was unable to find any record of the laying out of Wood road in the town highway records. Such records date from 1844 to 1920, but four pages are missing therefrom. However, sec. 80.01 (2), Stats., recognizes that highways may have been laid out by town boards and no record made thereof. Furthermore, there is the possibility that Wood road may have been laid out by the town and a proper record made thereof, and that such record was included in the four pages of missing records.

Prior to 1850, Kenosha county constituted part of Racine county and those parts of the public records antedating 1850 relating to Kenosha county, which were not destroyed by a fire that occurred many years ago, are to be found in the courthouse at Racine. At the trial the defendant county called as its witness an employee in the office of the county surveyor of Racine county. This witness produced Survey

Book A, which constituted part of the records maintained in the office of such county surveyor, and read into the record part of survey No. 718 dated in 1848 from such book as follows: "Survey of an alteration of a road in the town of Pike commencing at the center of section north 13 in the center of a laid road from east to west and north to south, township 2, range 22." The then town of Pike in Racine county included the present town of Somers in Kenosha county. The words "from east to west and north to south" have reference to the section and not to the highway referred to as a "laid road." This is because one and not two roads are referred to, and, furthermore, it is most unlikely that the longitudinal center of a highway would be used as a starting point. The center of such section 13 does lie within the boundaries of Wood road and there is no evidence before us of the existence of a highway running in an easterly and westerly direction along the east and west quarter line of section 13. Therefore, the only reasonable inference to be drawn from this quoted portion of the survey is that the highway therein referred to was the highway now known as Wood road. The center of section 13 is just one mile north of the south boundary of the Barrows' property prior to the sale of the south 20 acres thereof.

At the trial there was received subject to objection the plats of a number of surveys of land to the south and north of the Barrows' property, and of one parcel directly across the road from such property, which surveys were part of the official records in the office of the county surveyor of Kenosha county. All of these plats of survey showed the width of Wood road to be four rods. Subsequently in its memorandum decision the trial court ruled that such plats were inadmissible and excluded them from evidence.

It is our opinion that those plats of surveys which were more than thirty years old were competent and material evidence on the issue of whether Wood road was a laid road.

Such a plat more than thirty years of age qualifies as an ancient document under the exception-to-the-hearsay rule which permits the admission into evidence of such documents when properly authenticated. *Dickinson v. Smith* (1907), 134 Wis. 6, 14, 114 N. W. 133; McCormick, Evidence, p. 401, sec. 190. The rule governing the admissibility of ancient maps or plats is well stated in Anno. 46 A. L. R. (2d) 1318, 1322, as follows:

"An original map, over thirty years old, found in proper custody, authorized or recognized as an official document, and free on its face of suspicion, is admissible in evidence as an 'ancient document' to prove the location of a boundary line."

Defendant's Exhibits 1 and 9 clearly qualified under the above-stated rule. Both were produced by the county surveyor and authenticated by him. Exhibit 1 is a photostatic copy of a map or plat of a survey made of a subdivision recorded January 28, 1902, the survey for which was made in 1899. Such subdivision was bounded on the east by Wood road and is about one-half mile south of the Barrows' land. Such exhibit shows Wood road to be four rods wide.

The county surveyor produced as defendant's Exhibit 12, volume 2 of County Surveys of Kenosha county. Apparently, so as not to have to leave this official record book in evidence, he prepared a memorandum constituting defendant's Exhibit 9 which summarized what survey No. 537, page 114 of such book, disclosed. Such survey was made September 18, 1909, and covered a parcel in the southeast quarter of section 24, being the section in which the Barrows' property is located. Exhibit 9 certifies that such parcel was bounded on the west by Wood road and that the survey disclosed the width of Wood road at that point to be four rods. This parcel is less than one-half mile south of the Barrows' property.

Both defendant's Exhibits 1 and 9 clearly tend to negative that Wood road a half mile south of the Barrows' property was a highway established by user. At the time the two surveys covered by such exhibits were made there was no statutory presumption that a highway established by user was four rods wide, but only one that a laid road had such width. Therefore, if the Wood road were a highway established by user, the surveyors who made their 1899 and 1909 surveys would have shown only the width of the highway as actually used, if they had made an accurate survey. There is a presumption that a person has performed a duty enjoined upon him by law or private contract unless the contrary appears. 20 Am. Jur., Evidence, p. 222, sec. 227, and cases cited in footnote 12 thereof.

Counsel for the Barrows suggest a third possibility, and that is the owners of the property being subdivided might have been attempting to dedicate a four-rod highway by having the survey show such to be the width of Wood road. However, in the instance of both surveys, the north and south quarter section line was the boundary of the premises surveyed so that only two rods of the four rods' width of Wood road shown by the surveys were subject to the control of the owners of the property surveyed. We cannot conceive of a reputable surveyor attempting by his survey to establish a highway by dedication where half of the width of the highway to be shown on the survey map was on land not embraced in the survey, and not owned or controlled by the property owners by whom he was employed.

Act No. 24, as enacted by the Wisconsin territorial legislature at its annual 1839–1840 session, provided that the established width of all town roads should be 66 feet (four rods). In 1869 the state legislature enacted ch. 152, sec. 74, giving discretion to town boards to lay roads having a width

of either four or three rods. The present form of such statute is sec. 80.08. However, as previously pointed out herein, continuously since 1885 there has existed the statutory presumption now found in sec. 80.01 (2) that all laid roads are four rods in width. We, therefore, consider that a reasonable inference can be drawn from defendant's Exhibits 1 and 9, that Wood road at a point approximately·one-half mile south of the Barrows' property was a laid road. This is because no logical explanation has been presented which would account for the surveyors in 1899 and 1909 showing Wood road to be four rods wide other than they must have considered it to be a laid road.

Furthermore, there is a strong inference that, if that part of Wood road which runs through the center of section 13 was a laid road, as stated in the 1848 survey previously referred to, the entire length of Wood road as it traversed the three sections to the south was also a laid road. This is because it follows the north and south quarter section lines of such sections and leads into the city of Kenosha to the south. There is every indication that it was created as a unit and not piecemeal as would be the case if part had been created by user and the other part by the town's laying it out.

There is one further piece of evidence which tends to prove that all of Wood road, as it traversed the four sections in the town of Somers, was a laid road. This is provided by the testimony of the county surveyor. He testified that he found survey markers placed along the north and south quarter section lines of such sections to mark the center of the highway, which had been placed there by surveyors who had made prior surveys. This is significant because the center of the traveled portion of Wood road did not correspond at all points to the quarter section lines. Therefore, if the Wood road opposite the Barrows' property, and to the south there-

of, had been established by user such markers would ordinarily have been placed in the center of the traveled portion of the highway and not along the quarter section line.

However, none of the above-recounted evidence, in favor of Wood road having been a laid highway opposite the Barrows' property at the time of making the 1954 improvement, is conclusive on the issue. On the other hand, when we examine the evidence relied upon by the Barrows to prove that it was a highway established by user, all that we have is the evidence relating to the existence of the barbed-wire fence along the west side of the Barrows' property for at least forty-five years and of the other fence which at one time stood on the opposite side of the highway. While this would be strong evidence to rebut the presumption that the highway was four rods wide, if it were a highway created by user, we do not deem that it has much weight on the issue of whether the highway was a laid road or one created by user.

We take judicial notice of the fact that the first patents on barbed-wire fencing were not taken out until 1874. 3 Encyclopaedia Brittanica (14th ed.), Barbed Wire, p. 97. Thus, the barbed-wire fence along the west side of the Barrows' property must have been built sometime after 1874 while there is direct evidence that the highway in question existed in section 13 in 1848, and there is a reasonable inference that it then existed through the three sections to the south in the direction of the present city of Kenosha. Disregarding such inference, there is nothing to indicate under any reasonable view of the evidence that the erection of such barbed-wire fence predated or was contemporaneous with the creation of the highway. An encroachment, such as a fence, erected within the limits of a laid highway, no matter what its duration, would not bar the legal right of the town or county to open the highway to its full legal width. *Nicolai v. Davis* (1895), 91 Wis. 370, 64 N. W. 1001.

One Lichter, who was eighty-one years of age at the time of trial, testified as a witness for the Barrows. He had been familiar with Wood road and the Barrows' property for forty-five years and he had worked the Barrows' farm for a number of years prior to 1920. Lichter had then worked the road for some ten or twelve years. After giving such testimony he was asked these questions and gave these answers thereto:

"Q. Do you know the width of that road when you worked it? A. Yes.
"Q. What was the width of it? A. A three (3) rod road."

Counsel for the county moved to strike the last answer as incompetent. In the discussion which followed between the trial court and counsel the court voiced the opinion that such answer might be competent on the issue of the width of the road if it were one created by user. That may be so, but such answer is incompetent on the issue of whether the highway was a laid road or one created by user.

It is our considered conclusion that under the great weight and clear preponderance of the evidence, Wood road was a laid road and not one established by user, and, therefore, the trial court's finding to the contrary cannot stand.

There remains the further issue of whether the statutory presumption, that such laid road was four rods in width immediately prior to the making of the 1954 improvement, has been rebutted by the evidence adduced in behalf of the Barrows. Construing the Lichter testimony as to the three-rod-highway width as being based on the distance between the Barrows' fence and the one-time-existing fence across the road, we have evidence which standing by itself would indicate the legal width of Wood road at such point to be three rods. Taking the location of the Barrows' fence alone, it was approximately but not exactly one and one-half rods from the quarter section line marking the center of the high-

way. However, there is competent evidence that Wood road both to the south and north of the Barrows' property was four rods wide. Not only do defendant's Exhibits 1 and 9 show this to be the case a half mile south of such property, but there was also testimony that in 1952, at a point 4,616 feet south of the Barrows' parcel, fences were standing on both sides of Wood road 70½ feet apart.

Up to the time of the 1848 survey in section 13, which made reference to the highway now constituting Wood road being a laid highway, there was no statutory authority for laying anything but a four-rod road. In the absence of any testimony to the contrary, it must be presumed that the statute had been carried out and that Wood road as it existed in 1848 at the center of section 13, a mile north of the Barrows' property, was a four-rod road. Furthermore, one of the excluded exhibits was defendant's Exhibit 11 which was a survey made by the county surveyor in May, 1943, of land 100 rods north of the Barrows' property, and constitutes part of the county surveyor's original records. It shows Wood road to have a width of four rods at such point. Sec. 59.60, Stats., requires the county surveyor to keep a record of all surveys made by him in record books provided by the county. We deem that such exhibit was admissible under sec. 327.18 (1), to prove that Wood road was four rods wide at a point 100 rods north of the Barrows' property.

The record is barren of any evidence which would offer any explanation as to why the town authorities may have laid out the highway so as to be four rods in width both to the north and south of the Barrows' property, but have laid it out as a three-rod width opposite the Barrows' parcel. All of the evidence must be viewed as a whole in determining whether the existence of the fence line, or lines, at and opposite the Barrows' property, raise a reasonable inference that Wood road was there laid out at a three-rod width. We do

not believe that it does and, therefore, the statutory presumption has not been rebutted.

The brief in behalf of the Barrows cites the case of *State ex rel. Jarman v. Root* (1921), 175 Wis. 188, 184 N. W. 685, in support of the contention that the existence of the west fence line of the Barrows' property for at least forty-five years is proof of the fact that Wood road was never laid out to the east of such fence line. A careful examination of this case discloses that it is not in point on this issue. In that case the town had laid out the road there at issue at a width of four rods, such road running from north to south along the quarter section line, but there was no record of any damages having been paid to the owners of the land underlying the west two rods of such road. A fence had at all times thereafter been maintained along the quarter section line by the owners of the land on the west side of such road and only the east two rods of the road as laid had been opened up to travel and been worked. The action was one in mandamus to remove the fence as an encroachment. The court held that the existence of the fence since 1865 substantially on the quarter section line rebutted any presumption that the town authorities had properly performed their duty of paying damages to the owners of the west two rods of the land underlying the road as originally laid out.

If in the *Jarman Case* the fence had been maintained one rod to the west of the quarter section line instead of substantially on it, so that the east rod of the lands lying to the west of such quarter section line had been included in the traveled portion of the highway, we are convinced that the court would have held the fence to be an encroachment. This is because the existence of the fence at such a location would not have rebutted the presumption of regularity. In such a situation no inference could be drawn that the property owners to the west had not been paid something for their

72

damages, inasmuch as one rod of their land would have been included in the highway actually opened up and worked. In the instant case the fence relied upon by the Barrows did not stand substantially on the quarter section line but was slightly more than a rod to the east thereof.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the plaintiffs' complaint.